IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| KAYLA MOODY HARRIS, )<br>Petitioner, )<br> )<br>v. )<br> )<br>RICK THALER, Director, )<br>Texas Department of Criminal Justice, )<br>Correctional Institutions Division, )<br>Respondent. ) | Civil No. 7:08-CV-078-O |

FINDINGS AND RECOMMENDATIONS

Before the Court is a petition for habeas corpus relief brought pursuant to 28 U.S.C. §2254 by an inmate confined in the Hobby Unit of the Texas Department of Criminal Justice in Marlin, Texas.[1] By Order Referring Case ( Docket No.15) this matter was referred to the undersigned for hearing, if necessary, and determination or recommendation.

On February 7, 2004, Petitioner was convicted by a jury in the 90th District Court of Young County, Texas for the offense of manufacture of methamphetamine, a controlled substance, in an amount over 400 grams. She was sentenced to 47 years in prison and assessed a $140,000.00 fine. On August 4, 2005, Harris' conviction was affirmed on direct appeal to the Second Court of Appeals and, on February 15, 2006, her petition for discretionary review to the Texas Court of Criminal appeals was refused. On April 23, 2007 she filed a state application for habeas relief. The Court

---

[1] With his response (Docket No.12) the respondent tendered the state administrative record consisting of the Appellate Record (AR), which contained a Master Index of pp.1-9, a Trial Transcript pp. 1-160 (TR), and Exhibit Volume pp. 1-136 (EV); Trial Clerk Record pp. 1-76 (TCR); Direct Appeal Record (unnumbered) (DAR); Court of Appeals Habeas Record (unnumbered) (CAH); Trial Court Habeas Record pp. 1-6 (TCHR).

1

of Appeals remanded the application to the trial court to conduct further proceedings and to make specific findings of fact. In compliance with the directive of the Court of Appeals, the trial court received and considered certain affidavits and made the fact findings. Based on those fact findings, on April 2, 2008, the Court of Criminal Appeals denied her application for habeas corpus relief without further written order[2] but over the written dissent by Judge Meyers who would have afforded Harris a hearing on the issue of "factual innocence."[3]

Petitioner now seeks federal habeas relief on the following grounds:

1. That she is factually innocent of the offense of which she was convicted and sentenced; and,
2. That she was denied effective assistance of counsel because the court appointed attorney failed to interview Jimmy Clayton, one of the alleged co-conspirators who would have testified, if called, that although Harris was in the residence where the methamphetamine was being manufactured, she had no knowledge of the manufacturing or of the presence of drugs on the premises.

The AEDPA provides in relevant part that:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[4]

---

[2] CAH p.5 "Action Taken" order where in the Court stated "**DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT WITHOUT HEARING.**"

[3] CAH final 2 pages.

[4] 28 U.S.C.A. § 2254(d) (West 2010); *Riddle v. Cockrell*, 288 F. 3d 713, 716 (5th Cir. 2002)

Under the "contrary to" clause, a federal court may grant the writ of habeas corpus if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court either unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; *see also, Valdez v. Cockrell*, 274 F.3d 941 (5th Cir. 2001). A state court unreasonably applies clearly established federal law if it identifies the correct governing principal by unreasonably applies that principal to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). The question is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The standard for determining whether a state court's application was unreasonable is an objective one, and applies to all federal habeas corpus petitions which, like the instant case, were filed after April 24, 1996, provided that they were adjudicated on the merits in state court. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). In the context of habeas corpus, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on *substantive* rather than *procedural* grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

Upon a finding of state court compliance with the "contrary to" clause of 28 U.S.C. § 2254(d)(1), federal courts give deference to the state court's findings unless such findings violate the "unreasonable application" clause of 28 U.S.C. § 2254(d)(2). *Chambers, supra* at 363. The "unreasonable application" clause concerns only questions of fact. *Hill v. Johnson*, 210 F.3d 481,

485 (5th Cir. 2000). The resolution of factual issues by the state court is afforded a presumption of correctness and will not be disturbed unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 550 (1981). Absent such evidence, the presumption of correctness is applied provided that the state court findings are evidenced in writing, issued after a hearing on the merits, and are fairly supported by the record. 28 U.S.C. § 2254(d); *E.g., Burden v. Zant*, 498 U.S. 433, 436-37 (1991); *Williams v. Scott*, 35 F.3d 159, 161 (5th Cir. 1994). Furthermore, as discussed above, AEDPA put into place a deferential scheme, under which the federal court must defer to a state court adjudication on the merits. 28 U.S.C. § 2254(d). In the prefatory paragraph to (d)(1) and (d)(2), the statute provides that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings." The word "shall" is mandatory in meaning. *In re Armstrong*, 206 F.3d 465, 470 (5th Cir. 2000); *City of Dallas, Tex. v. FCC*, 165 F.3d 341, 358 (5th Cir. 1999). Thus, the court lacks discretion as to the operation of this section. *Lopez v. Davis*, 531 U.S. 230, 240-41, 121 S. Ct. 714, 722, 148 L. Ed. 2d 635 (2001); *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 772-77, 104 S. Ct. 2105, 2110-2113, 80 L. Ed. 2d 753 (1984). The use of "any" makes clear that this section applies to all cases adjudicated on their merits in state court. The term "adjudication on the merits," like its predecessor "resolution on the merits," refers solely to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons. *Neal v. Puckett*, 239 F.3d 683, 686-87 (5th Cir. 2001); *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999). It does not speak to the quality of the process. *See Green v. Johnson, supra* at 1121 (rejecting pre-AEDPA contention that "the resolution on the merits prerequisite is a proxy for the quality of the legal process resolving a dispute"); *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000) (applying Green to "adjudication on the merits").

Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). A meritorious claim of uncalled witnesses requires that a habeas petitioner show not only that the testimony would have been favorable, but also that the witness would have so testified during the proceeding. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Harris introduced before the trial court on the remand of her habeas application the written statement of Jimmy Clayton, a co-defendant.[5] Clayton had plead guilty and had been sentenced before Harris' trial. In his statement Clayton claimed that he had not been interviewed by Harris' attorney; he had not been called by the attorney as a witness; and, had he been called, he would have truthfully testified that Harris, though present at the residence where the drug search was initiated and conducted, did not know that drugs were manufactured there nor that there were drugs on the premises. Thus, Harris posits that her attorney rendered constitutionally deficient representation by failing to interview Clayton to determine the character and content of his available testimony which, if proffered at trail, would have established clearly for the jury, as the fact finders, that she had no knowledge of the drugs or manufacturing operation at the premises, and for the court to have directed a verdict of not guilty as a matter of law.

Harris presented her two claims to the state courts in her application for writ of habeas corpus. Upon remand from the Court of Appeals, the trial court had before it and considered the written statement of Jimmy Clayton, together with the Affidavit of Amy Gray,[6] her trial counsel. In her affidavit attorney Gray claimed that she offered to talk to Clayton but she and Harris discussed, but then rejected, the prospect of calling Jimmy Clayton as a witness, since his testimony

---

[5]  Appendix B to Application for Writ of Habeas Corpus pp.46-47 in CAH.

[6]  TCHR pp. 5-6.

could "easily do more harm than good." She averred that Harris agreed to that decision not to call Clayton.

Because Harris presents a claim of ineffective assistance of counsel, the court must analyze the state court habeas decision in light of *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* established a two-prong test for deciding ineffective assistance claims, under which the petitioner must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* at 687. Counsel's performance is deficient where it falls short of reasonable performance under prevailing professional norms. *Id.* at 688. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. In order to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different *Id.* at 694. If the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 697.

Applying *Strickland* to the case at hand, the trial court on the remand from the Court of Appeals elected to receive testimony in affidavit form from trial counsel in lieu of conducting a plenary hearing. In the light of that affidavit of trial counsel, the court made the following **relevant** fact findings:

1. ....
2. ....
3. At trial, Applicant was represented by Amy Castle Gray, Attorney at Law.
4. Jimmy Clayton was not called as a witness for the Applicant at Trial.
5. Jimmy Clayton was a co-defendant of Applicant's.
6. Jimmy Clayton had been sentenced to 25 years imprisonment after entering a plea of guilty.
7. Applicant and her attorney discussed the possibility of calling Jimmy Clayton as a witness.
8. Applicant and her attorney agreed not to call Jimmy Clayton as a witness for Applicant.
9. Applicant agreed with her attorney that even "favorable" testimony from Mr. Clayton would not have added to her case.

  10. ...
  11. ...
  12. Jimmy Clayton's testimony would confirm Applicant's presence at the residence.
  13. Applicant agreed with her attorney that calling Jimmy Clayton, or any other of the three co-defendants, would result in more harm to Applicant than any benefit.

Based upon these fact findings, the trial court concluded as follows:

  1. The performance of Applicant's trial attorney was not deficient.
  2. The performance of Applicant's trial attorney did not prejudice Applicant.

I find that the state courts disposed of Harris' claims "on the merits" and not on procedural grounds.

The record of proceedings before the Court of Appeals reflects that the court accepted the findings and conclusions of the trial court and, based thereon, denied Harris' habeas corpus application. These fact findings are directed toward the very issues mandated by *Strickland*. These fact findings cannot be characterized as being unreasonable. Indeed, these fact findings are reasonably supported by the evidence before the trial court in the habeas proceeding. Furthermore, I find that the trial court's conclusions of law which address each of the prongs of *Strickland* were reasonably applied to those facts.

Harris' second ground for relief is her assertion that she is "factually innocent" of the charge of which she was found guilty by the jury. She is essentially challenging whether the state presented enough evidence to affirmatively link her to the manufacture of a controlled substance. This proposition was the very heart of Harris' trial strategy and appellate presentations. This point was raised and rejected by the Court of Appeals and in the state habeas corpus proceedings. This issue proceeds from the language of the Texas statute that defines the drug offense[7] and certain state court cases that in order for the state to sustain a conviction for manufacturing a controlled substance, it

---

  [7] §481.002(25) Texas Health and Safety Code (Vernon Supp. 2003).

must "affirmatively link"[8] the defendant either (1) to an interest in the place where the manufacturing was taking place or (2) to the actual act of manufacturing.[9] Harris claims that the evidence in the trial court was both factually insufficient and legally insufficient to establish either link.

Claims of actual innocence (whether based upon existing or newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the state criminal proceeding. *Herrera v. Collins*, 506 U. S. 390, 400 (1993); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). To determine whether the evidence is legally sufficient to sustain a conviction, the Federal Court is constrained to ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307. 319 (1979). Review of the legal sufficiency of the facts is further constrained by the AEDPA requirement[10] that the federal court give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings, unless the decision was either "contrary to, or involved and unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000). The Texas Court of Appeals on Harris' direct appeal in applying the *Jackson* standard found that "the evidence, both direct and circumstantial, is legally sufficient to support the jury's determination that there was a sufficient affirmative link between Appellant [Harris} and the

---

[8] *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995).

[9] *East v. State*, 722 S.W.2d 170, 171-72 (Tex. App.-Fort Worth 1986, pet. ref'd).

[10] 28 U.S.C.§2254(d)(1).

manufacture to support her guilt."[11] This finding by the Court of Appeals is presumed to be correct and Harris has failed to rebut that presumption by clear and convincing evidence.

I find that the trial court's findings and conclusions which form the basis of the state court's determination that Harris' trial attorney did not fail to render adequate representation are not contrary to, nor an unreasonable application of, Supreme Court precedent and are entitled to the presumption of correctness[12] and are correct. I further find the Texas Court of Appeals determined that there was legally sufficient evidence to establish an affirmative link between Harris and the manufacture of amphetamines as to support the jury's verdict of guilt. I find that Harris has failed to adduce clear and convincing evidence that the determination by the Texas Court of Appeals was unreasonable . Accordingly, I recommend that the District Court deny Petitioner's Petition for Writ of Habeas Corpus.

A copy of this Order shall be transmitted to Petitioner.

It is so Found and Recommended and Ordered, this 29th day of March, 2011.

_____
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

---

[11] DAR, Memorandum Opinion, p. 8.

[12] *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001).

## Standard Instruction to Litigants

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).